UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY SCOTT BOSMA,

               Plaintiff,

v.

MICHIGAN DEPARTMENT OF
INSURANCE AND FINANCIAL
SERVICES,

               Defendant.
_____/

Civil Action No. 21-11398

Matthew F. Leitman
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 23)

**Background**

*Pro se* plaintiff Jeffrey Scott Bosma ("Bosma") commenced this action against Defendant Michigan Department of Insurance and Financial Services ("DIFS") alleging claims related to his efforts to become licensed to provide insurance services. Although his specific claims are somewhat difficult to decipher, Bosma seems to allege that (1) his rights under the Americans with Disabilities Act and the Rehabilitation Act were violated when, in June 2017, and again in late 2020 and early 2021, DIFS declined his requests to take a licensure examination at an alternative testing site; and (2) DIFS violated some unspecified Michigan state law when it failed to issue him insurance licenses for which he had applied – personal lines insurance, life insurance, and health insurance. As relief, Bosma sought "issuance of [the] state licenses applied for," "allowance of proctored testing at local community college or another remote testing site," and money damages. An Order

of Reference was entered on July 20, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 20).

Before the Court is DIFS' motion for summary judgment which it filed on August 9, 2021.  (ECF No. 23).  In short, DIFS argued that (1) Bosma's claims regarding the 2017 testing location are barred by the applicable statute of limitations, (2) his claims regarding the 2020 and 2021 testing locations are moot because Bosma took the insurance licensing exam at an approved site in February 2021, (3) his "non-federal" claims regarding DIFS' failure to issue him the licenses fail because Bosma had not provided all of the required information for DIFS to be able to issue the licenses, and (4) the Eleventh Amendment bars Bosma's claims for money damages.  Bosma filed a response, though it failed to meaningfully address DIFS' arguments, and DIFS filed a reply.  (ECF Nos. 26, 27).

On October 1, 2021, DIFS filed a supplemental brief advising that Bosma had "taken and passed the underlying examinations for the three insurance licenses that he applied for," and that DIFS had issued the licenses.  (ECF No. 29, PageID.2115).  Thus, DIFS argued that Bosma "has no need to take any further insurance licensing examinations . . . [and has no] current request to DIFS for a testing accommodation . . ." (*Id.*).  Relatedly, DIFS argued that Bosma's taking the tests at approved locations so soon after his accommodation requests, and passing them, establishes that his ADA and Rehabilitation Act claims fail on the merits.  Finally, DIFS argued that because it has now issued Bosma the three insurance licenses he applied for, Bosma's claims regarding DIFS' earlier failure to issue those licenses are moot.  The Court held oral argument on October 26, 2021.  For the reasons stated on the record and below, DIFS' motion for summary judgment should

2

be granted.

**Discussion**

### *ADA and Rehabilitation Act Claims*

In light of DIFS' aforementioned arguments, including in particular those raised in its supplemental brief, Bosma represented at the hearing that he is no longer pursuing relief as to his ADA and Rehabilitation Act claims. Accordingly, DIFS' motion for summary judgment as to those claims should be granted as no longer opposed.

### *Claims Regarding Issuance of Bosma's Insurance Licenses*

At least on a prospective basis, Bosma took a different view of his claims related to the issuance of his licenses. (ECF No. 1, PageID.5) ("Three professional insurance licensures are being withheld from rightful and lawful issuance."). While DIFS characterizes these as Bosma's "non-federal" or "state law" claims (ECF No. 23, PageID.1960; No. 29, PageID.2115), Bosma was silent as to their underpinnings. In his complaint, Bosma references "Personal Property Code 380 other personal property damage." (ECF No. 1, PageID.4). But there is no such Michigan statute,[1] and Bosma appears to be referring to this Court's "Civil Nature of Suit Code Descriptions," which clearly does not create an independent cause of action. *See* https://www.uscourts.gov/sites/default/files/js_044_code_descriptions.pdf (identifying Code 380 cases as ones involving "Other Personal Property Damage [–] Action primarily based on damage to personal property caused by harmful conduct such as negligence,

---

[1] Chapter 380 of the Michigan Compiled Laws is the state's Revised School Code, which has no applicability here.

3

misrepresentation, interference with business relationships or unfair trade practices.").

Bosma's complaint also references recently amended Michigan Insurance Code provisions that concern, in part, licensing issues where the applicant and/or licensee has a felony conviction. (*Id.*, PageID.5) ("On 5/21/2020 the State of Michigan Legislature Enrolled House Bill No. 40444 became effective ammending [sic] sections 1205 and 1239 Insurance Code of 1956 changing life time [sic] offenses for low class felonies to a ten year look back period."). These provisions are relevant here because Bosma has a felony conviction from 1999 which he seems to claim was the reason DIFS initially denied him the licenses he had applied for, and that in light of the aforementioned change, his prior conviction is now outside the "look back" period. Whether Bosma is attempting to assert a state law claim based on DIFS' application of these Code provisions, or some sort of federal due process claim, DIFS is entitled to summary judgment because no present "case or controversy" exists with respect to his licenses.

A review of the salient statute, M.C.L. § 500.1239 brings into focus Bosma's concerns. M.C.L. § 500.1239(1)(d) provides that DIFS "shall not issue a license" if the applicant was "convicted of a felony within 10 years before the uniform application was filed." M.C.L. § 500.1239(1)(d). Because Bosma's felony conviction was beyond this new 10-year lookback period, DIFS was not *required* to refuse to issue him a license. However, § 500.1239(2)(b) provides that DIFS "*may* place on probation, suspend, or *revoke* an insurance producer's license . . . and [DIFS] *may* refuse to issue a license . . . [if the person has been] convicted of a felony . . ." M.C.L § 500.1239(2)(b) (emphasis added). Thus, while Bosma's felony conviction did not *require* DIFS to refuse him a license, DIFS

4

*could* have refused to issue him a license because of it. And, as noted above, at least facially, the statute suggests that DIFS still has the ability to "revoke" his license because of his prior felony conviction.

At the hearing, Bosma represented that because DIFS issued him the three insurance licenses during the pendency of this action, he is no longer seeking relief with respect to DIFS' prior licensure denials. Indeed, with the licenses having issued, Bosma's request for injunctive relief (ECF No. 1, PageID.6 (seeking "issuance of state licensures applied for")) is moot. Moreover, DIFS is entitled to Eleventh Amendment immunity from Bosma's claim for both injunctive relief and money damages.[2] As explained recently by the Honorable Victoria A. Roberts in a civil rights case against DIFS:

> Regardless of the relief sought, Eleventh Amendment immunity bars a suit in federal court against a State and its departments and agencies unless the State waived its sovereign immunity or unequivocally consented to be sued. [] Eleventh Amendment immunity is jurisdictional in nature. [] The state of Michigan has not consented to being sued in civil rights actions in federal court, and Congress has not abrogated Michigan's sovereign immunity with respect to Miller's claims. [] MDAG and MDIFS are departments of the State of Michigan. The Eleventh Amendment bars Miller's claims against MDAG and MDIFS . . .

*Miller v. Mich. Dep't of Att'y Gen.*, No. 21-10990, 2021 WL 4479699, at *3 (E.D. Mich.

---

[2] Although DIFS did not address this issue in its briefing, the Court notes that it is not necessarily the case that Eleventh Amendment immunity applies with respect to Bosma's ADA and Rehabilitation Act claims. Although that could be the case, *see e.g.*, *Tranchmontagne v. United States Dep't of Hous. & Urb. Dev.*, No. 20-CV-12842, 2021 WL 2662283, at *8 (E.D. Mich. June 29, 2021), the constitutional question of abrogation of Eleventh Amendment immunity "'will be reached only after finding a viable claim under [the ADA or Rehabilitation Act],'" *Zibbell v. Mich. Dept. of Human Servs.*, 313 F. App'x 843, 847-48 (6th Cir. 2009), and in light of the fact that Bosma is no longer seeking relief as to his ADA or Rehabilitation Act claims, the Court need not assess their viability for purposes of the immunity analysis.

Sept. 30, 2021).

Thus, with respect to Bosma's claims related to DIFS' past denial of his license applications, DIFS is entitled to summary judgment.

This does not end the discussion because Bosma insisted at the hearing that he still has a claim based on a concern that DIFS *may* revoke his licenses in the future. To the extent this raises a state law claim, it is clearly barred by Eleventh Amendment immunity. *Id.*; *King v. Whitmer*, 505 F. Supp. 3d 720, 729 (E.D. Mich. 2020) ("Unquestionably, Plaintiffs' state law claims against Defendants are barred by Eleventh Amendment immunity."). However, to the extent Bosma attempts to raise a federal due process claim to prevent DIFS from revoking his licenses, Eleventh Amendment immunity arguably would not apply because, under the *Ex Parte Young* doctrine, such immunity does not apply to "a suit against a state official seeking prospective injunctive relief to end a continuing violation of federal law." *See Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002) (citations omitted). But even if Bosma's claim for prospective injunctive relief can successfully navigate the Eleventh Amendment immunity issue, it fails because he lacks standing to assert it.

Under Article III of the United States Constitution, this Court only has jurisdiction to hear certain categories of "cases" and "controversies." Moreover, "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (internal quotation marks omitted). *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) ("It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not

merely at the time the complaint is filed.'") (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). Thus, as the United States Supreme Court recently explained, Article III contains "[t]wo related doctrines of justiciability . . . First, a plaintiff must demonstrate standing, including 'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical.' [] Second, the case must be 'ripe'—not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535, 208 L. Ed. 2d 365 (2020). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, ––– U.S. –––, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635 (2016). The ripeness "doctrine is designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements," *Insomnia Inc. v. City of Memphis*, 278 Fed.Appx. 609, 612 (6th Cir. 2008) (citations and internal quotation marks omitted), and it "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review," *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997).

The Supreme Court has "said many times before" that "[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III." *Whitmore v. Arkansas*, 495 U.S. at 149, 158 (1990); *see also Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019). This general rule "does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness," and "a threat of future harm can satisfy the injury-in-fact requirement of Article III standing if 'there is a 'substantial risk' that the harm will occur.'" *Saleh v. Barr*, 801 F. App'x 384, 391 (6th Cir.

7

2020) (quoting *Kanuszewski*, 927 F.3d at 405). At this pleading stage of the case, Bosma bears the burden of alleging adequate facts from which the Court could find that such a "substantial risk" of future harm exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Bosma fails Article III's standing and ripeness requirements because he does not allege any facts from which the Court could find that DIFS *will* revoke his license, or that DIFS is even *likely* to revoke his licenses. Rather Bosma simply has professed a concern that under the M.C.L. § 500.1239(2)(b) DIFS *could* do so. When pressed at the hearing, however, Bosma could provide no factual basis for his concern, and instead simply referred to wanting to protect his "civil rights." Bosma's concerns about what may happen in the future are thus purely speculative, which is insufficient to establish standing or a ripe claim. *See Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) ("[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief."); *see also Hugh Johnson Enterprises, Inc. v. City of Winter Park, Fla.*, 231 F. App'x 848, 851 (11th Cir. 2007) (holding that adult entertainment club's factually unsupported concern that municipality would revoke its operating license was "unripe for adjudication").

It is also worth noting that the risk of DIFS revoking one or more of Bosma's licenses simply because he has a prior felony ***that was disclosed to and known by DIFS when it issued him the licenses*** seems remote. As Michigan Supreme Court Justice

8

Michael F. Cavanaugh explained in his concurrence in *King v. State*, 488 Mich. 208, 217 (2010), a case against DIFS' predecessor regulatory body:

> [DIFS] may not—in the absence of additional cause—revoke plaintiff's license solely on the basis of the fully disclosed and waived felony conviction known to [DIFS] when it issued plaintiff's license in 2004. I would additionally hold that a governmental licensing agency is estopped from revoking a license solely on the basis of the same fully disclosed and accurate facts for which it had previously granted an express waiver if the licensee has reasonably relied to his detriment on the license issued.

*King*, 488 Mich. at 217.

Finally, in the event DIFS did attempt to revoke one or more of Bosma's licenses, he would not be without recourse, as he could pursue his administrative remedies under Michigan's Administrative Procedures Act. *NAS Sur. Grp. v. Cooper Ins. Ctr., Inc.*, 617 F. Supp. 2d 581, 588 (W.D. Mich. 2007).

For all of the above reasons, Bosma's concern that DIFS may revoke his insurance licenses at some point in the future does not present a justiciable "case" or "controversy." Thus, this Court lacks jurisdiction to hear that matter, and DIFS is entitled to summary judgment on this claim.

## **Conclusion**

For the reasons stated on the record and above, **IT IS RECOMMENDED** that DIFS' motion for summary judgment **(ECF No. 23)** be **GRANTED**.

Dated: November 3, 2021  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 3, 2021.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager